Filed 4/6/23 P. v. Thompson CA4/2
See Dissenting Opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080049 |
| v. | (Super.Ct.No. INF032358) |
| BRANDEN MARTEL THOMPSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

### STATEMENT OF THE CASE

On May 21, 2001, defendant and appellant Branden Martel Thompson was convicted after a jury trial of a single count of attempted murder and other offenses. The

1

jury found that the attempted murder was deliberate and premeditated. We affirmed the judgment on appeal in a nonpublished opinion. (*People v. Thompson* (Aug. 8, 2002, E029836) [nonpub. opn.].)

On June 3, 2022, defendant filed a pro se petition for resentencing pursuant to section 1172.6.[1] The trial court appointed counsel for the defendant and set a status conference. At the status conference, the prosecution made an oral motion to dismiss the petition. The court summarily denied the petition, stating that "defendant is statutorily ineligible." Defendant timely appealed.

## STATEMENT OF FACTS[2]

In June 1999, Jose Luis Garcia Cervantes, Sr. (Cervantes) lived with his family in a primarily African-American neighborhood. On June 1, 1999, Jose Garcia, Jr. (Garcia) and his wife went to his father's house for a visit. During the visit, defendant and two other African-American males approached Garcia and his brother as they stood in front of their father's house. One of three men yelled out, "You Mexican[s], you guys shouldn't live here. You should get out of here." Defendant also said, "Wetbacks, you shouldn't be living here."

Defendant initially swung at Jose, and a scuffle between them ensued. Several others joined in, including defendant's friends and Garcia's father and brothers.

---

[1] Assembly Bill No. 200 (Reg. Sess. 2021-2022) renumbered former section 1170.95 as section 1172.6. (See Stats. 2022, ch. 58, § 10.) For clarity and consistency, we refer to section 1172.6 throughout this opinion.

[2] The facts are taken from our opinion on appeal. (*People v. Thompson*, *supra*, E029836.)

2

Defendant and his friends picked up various objects from the ground, including rocks, tools, bottles, and even a bicycle, and threw them at Garcia and his family. One of defendant's companions hit Garcia's disabled brother with a hammer and a rock. To defend his son, Garcia's father, Cervantes, threw the rock back at them causing the attackers to disband. As defendant ran away, he threatened to come back and kill someone.

Cervantes went back to reading his magazine in his truck, which was parked near the house. A few minutes later, defendant returned in a truck, which was driven by another person, and stopped in front of the house. Defendant then opened the passenger side door, aimed his semi-automatic rifle, and fired several shots at Cervantes's truck and house. Some of the shots, including the first round, were directed at Cervantes. Cervantes was shot four times. He had permanent injuries, including a leg injury that required the use of a cane.

Inside the house, Cervantes's wife called the police.

During a subsequent police interview, defendant admitted that he went to his house, retrieved a semi-automatic rifle, loaded it, drove back to Garcia's house, and fired several rounds at the house. Defendant explained that he took action because one of his companions was injured by a rock and he himself was almost hit.

On August 9, 1999, after his arrest and release on bail, defendant and Cervantes noticed each other as they were driving their vehicles near Cervantes's house. As defendant slowly passed by, he took out a rifle and fired it into the air.

3

**DISCUSSION**

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and requesting that this court undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issue to assist the court in its search of the record for error: "Did the lower court err when it summarily denied [defendant's] petition for resentencing and found him statutorily ineligible for relief?" (All capitals omitted.) Counsel also filed a declaration stating that she provided the defendant with a copy of the brief and the record and advised him that he may personally file a supplemental brief raising any issues he chooses to call to our attention. We issued an order granting the defendant personally 30 days to file any supplemental brief he may deem necessary.

Shortly thereafter, the California Supreme Court decided *People v. Delgadillo*, holding that appellate courts are not required to independently review the record for potential errors in an appeal from the denial of postconviction relief under section 1172.6, except to evaluate any issues that may be raised by the defendant in a supplemental letter or brief. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 229 (*Delgadillo*).) The Supreme Court further stated that "if the appellate court wishes, it may also exercise its discretion to conduct its own independent review of the record in the interest of justice." (*Id.* at p. 230.)

4

We granted counsel's motion for leave to file a supplemental brief regarding *Delgadillo*. We then issued an order notifying defendant that this court is not required to conduct an independent review of the record on appeal from the denial of a section 1172.6 proceeding. The order granted the defendant personally 30 days to file his own supplemental brief and explained that we will issue an opinion evaluating any arguments presented in his supplemental brief. It also notified the defendant that failure to timely file a supplemental brief may result in the dismissal of the appeal as abandoned. No supplemental brief was filed.

We have exercised our discretion to conduct our own independent review in the interest of justice. (*Delgadillo*, *supra*, 14 Cal.5th at p. 228.)

We have independently reviewed the record for potential error. We are satisfied that defendant's attorney has fully complied with the responsibilities of counsel, and no arguable issue exists.

## DISPOSITION

The order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

I concur:

McKINSTER
Acting P. J.

5

[*People v. Thompson*, E080049]

RAPHAEL, J., Dissenting.

I respectfully dissent because I would follow the procedure prescribed by our Supreme Court in *People v. Delgadillo* (2022) 14 Cal.5th 216, 231-232 and order this postjudgment criminal appeal dismissed as abandoned because no issues are raised.

There may be some case in which we would wish to engage in an independent review of the record and issue an opinion, even where the defendant-appellant raises no issues. But here there is no explanation for why we are reviewing this record, nor any substantive reason offered for why we are affirming the trial court's ruling.

In fact, this is one of the many cases in which, as our Supreme Court recognized, "appellate courts can often readily confirm that a defendant is ineligible for relief as a matter of law without conducting an independent review of the entire record." (*People v. Delgadillo*, *supra*, 14 Cal.5th at p. 230.) The jury instructions show that the theory on which Brandon Martel Thompson was tried and convicted of attempted murder was one of "express malice aforethought, namely, a specific intent to kill unlawfully another human being." His jury was given no murder theory that has been addressed by Penal Code section 1172.6. Nothing else in the record needs to be examined. I would dismiss the case as abandoned and note that Thompson is ineligible for relief for this reason.

RAPHAEL _____

J.

1